IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MARY WOODS | ) | |
|  | ) | |
| Plaintiff, | ) | Case No. 09 C 7800 |
| v. | ) | |
|  | ) | Judge Virginia M. Kendall |
| VON MAUR, INC. | ) | |
|  | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mary Woods sued her former employer, Von Maur, Inc. ("Von Maur"), a department store chain, alleging that Von Maur did not promote her because she is black, and ultimately terminated her because of her race and because she complained about racial profiling of members of her family while they shopped at Von Maur. Moving for summary judgment, Von Maur counters that it did not discriminate against Woods, she was not qualified to be promoted to a buyer position, and that Von Maur properly fired her because she bought merchandise, returned it, and then bought it again after it was marked down, in violation of company policy. For the below reasons, Von Maur's motion is granted in part and denied in part. Woods' termination claim and retaliation claim under 42 U.S.C. § 1981 must proceed to trial, but summary judgment is proper on her failure to promote claim.[1]

**I.   MATERIAL UNDISPUTED FACTS**

Woods worked part-time as a sales associate at the Von Maur department store in Glenview, Illinois from September 2003 until she was fired in July 2008. (Pl. 56.1 Resp. ¶¶ 1-2, 4.) She filed

---

[1] Woods voluntarily dismissed her Title VII retaliation claim. (*See* Doc. 68.)

charges of race discrimination and retaliation with the Equal Employment Opportunity Commission a few months later. (*Id.* ¶ 19.) During that same period, she worked full-time at North Shore Hospital. (*Id*. ¶ 5.) Woods does not have a degree in fashion design, merchandising or business, and only worked as a retail buyer for 15 months in the early 1990s. (*Id.* ¶¶ 7-8.) She never held a supervisory or executive position at Von Maur. (*Id.* ¶ 12.)

Between July 2005 to July 2008, Gwen Ivory was Woods' department manager. (Doc. 70, VM 56.1 Resp. ¶ 4.) At the time Woods was fired, Katie Tucker was Woods' floor manager. (*Id.* ¶ 4.) She reported to Elizabeth Jaggi[2], the Glenview store manager, who in turn reported to Amy Rotert, the regional director of stores for the region that includes the Glenview store. (*Id.* ¶¶ 1-2.) While she worked at Von Maur, Woods' annual performance reviews stated that she was "meeting expectations" or that she "fully meets expectations." (*Id.* ¶ 8.) Woods' last review was similar, listing good reviews in areas concerning merchandise and customer relations, but also noting that she needed to improve her credit card account solicitation. (*Id*. ¶ 9.)

Though it is disputed whether a Von Maur employee needs to be a full-time employee to be eligible for promotion to buyer, it is Von Maur's practice that a current employee hold a full-time department manager position first before becoming a buyer, and Woods does not identify anyone who was promoted directly from part-time associate to buyer. (Pl. 56.1 Resp. ¶¶ 12, 14-15.) Between 2008 and 2010, Von Maur promoted several black employees to buyer. (*Id*. ¶¶ 16-17.)

During Woods' employment, Von Maur had various policies concerning an employee's purchase of Von Maur merchandise, including: (1) a discount was available to the employee and her immediate family; (2) in certain instances an employee could have merchandise pricing matched to

---

[2]Jaggi is also known as Elizabeth Shah.

that of a competitor; (3) in certain instances employees could receive price adjustments for merchandise that has been marked down; (4) in certain instances an employee could have merchandise held for a period of time (though it was generally not allowed); and (5) employees could not ring up their own purchases or ring up purchases for family that qualified for the employee's discount. (VM 56.1 Resp. ¶ 10.) Woods received the employee manual, acknowledged that she understood the policies, and understood that violating the discount policy could lead to termination. (Pl. 56.1 Resp. ¶ 28.) Though the parties dispute whether all the policies were equally important (*see id.*), they agree that the policies apply company-wide and are designed to prevent Von Maur from losing money. (VM 56.1 Resp. ¶ 11.)

Though Woods disputes whether they were actually violations of the employee purchase policy, Von Maur identified two series of transactions that were the basis of Woods' termination after an investigation by Tucker and Jaggi. (Pl. 56.1 Resp. ¶¶ 32-33.) Woods admitted that she bought a blouse for $52, returned it a week or so later, and then re-purchased the same blouse for $19 after it had been marked down. (*Id.* ¶ 34.) Woods also admitted that she bought a sweater for $43, bought the same sweater after it had been marked down to $21, and then returned the first sweater for $43. (*Id.* ¶ 35.) The latter transaction is not prohibited by the Von Maur employee handbook. (*Id.* ¶ 38.) Von Maur told Woods it fired her based on violations of the employee price adjustment policy. (*Id.* ¶ 43.) Maria Cecilia David, a non-black employee at the Glenview store, violated the price adjustment policy after 11 months on the job but was not fired. (*Id.* ¶ 45.) Rimma Likeover, a white employee in Glenview, violated the price adjustment policy just six days after she was hired but was also not fired. (*Id.* ¶ 46.) Jaggi fired a number of other white, black and Asian employees

3

for violations of the price adjustment policies or for returning worn merchandise. (*Id*. ¶¶ 49-50, 65-67, 68-69.)

While Jaggi was a human resources manager and Glenview's store manager, no employees came to her about issues of discrimination. (VM 56.1 Resp. ¶ 21.) Other than Woods' lawsuit, no Glenview employee ever filed a formal or informal complaint of discrimination or retaliation. (*Id*. ¶ 22.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court may "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular

matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

The same summary judgment standards apply in employment discrimination cases as in all other cases. *Alexander v. Wisconsin Dept. of Health and Family Servs*., 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc*., 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in many instances are genuinely contestable and not appropriate for a court to decide on summary judgment. *See id.* Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

## III. DISCUSSION

Woods brings three claims against Von Maur: (1) race discrimination under Title VII, 42 U.S.C. § 2000e *et seq*.; (2) race discrimination under 42 U.S.C. § 1981; and (3) retaliation under Section 1981.

### A. Racial Discrimination Claims (Title VII and § 1981)

Woods alleges that Von Maur discriminated against her in two ways. First, she was not promoted (or considered for a promotion) to a buyer position. Second, she was fired based on her race. Title VII forbids employers like Von Maur "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of" her race. 42 U.S.C. § 2000e-2(a)(1). Woods may defeat Von Maur's motion for summary judgment on her Title VII racial discrimination claims if she either: (1) presents sufficient evidence of discriminatory motivation to create a triable issue of fact (the "direct method") or (2) establishes a prima facie case of discrimination under the

5

"burden shifting" method articulated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (the "indirect method"). *See Sublett v. John Wiley & Sons*, 463 F.3d 731, 736-37 (7th Cir. 2006). Woods' § 1981 claim for racial discrimination is evaluated under the same framework as her Title VII claim and the Court will analyze the two simultaneously. *See Alexander v. Wisconsin Dept. of Heath and Family Servs.*, 263 F.3d 673, 681-82 (7th Cir. 2001).

Under the direct method, Woods may use two different kinds of evidence to demonstrate that Von Maur's employment decision was the result of discrimination: (1) direct evidence or (2) circumstantial evidence. *Phelan v. Cook Cty.*, 463 F.3d 773, 779 (7th Cir. 2006). Direct evidence of discrimination is evidence which, if believed by the trier of fact, "will prove the particular fact in question without reliance or inference or presumption." *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999) (quoting *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997)) (internal quotation omitted). Direct evidence typically is an admission by the decision maker that she acted upon the discriminatory animus. *Phelan*, 463 F.3d at 779. Nevertheless, direct evidence "does not require a virtual admission of illegality" or an explicit reference to Woods' protected status. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999). Circumstantial evidence generally comes in two forms: "(1) ambiguous statements or behavior toward other employees in the protected group that taken together allow an inference of discriminatory intent and (2) evidence of systematically better treatment of employees outside the protected class." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 393 (7th Cir. 2010).

The indirect method of proof requires Woods to introduce evidence demonstrating four prima facie elements to survive summary judgment on her racial discrimination claim: (1) that she was a member of a protected class, (2) that she was performing her job satisfactorily, (3) that she suffered

an adverse employment action, and (4) that Von Maur treated a similarly situated individual outside Woods' protected class more favorably. *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009). If Woods satisfies those elements, thus giving rise to an inference of discrimination, the burden shifts to Von Maur to identify a legitimate, nondiscriminatory reason for the employment decision. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). If Von Maur offers a nondiscriminatory reason for not hiring Woods as a buyer and for firing her, "summary judgment would only be erroneous if [Woods] produced evidence that the proffered reason was a pretext for racial discrimination." *Montgomery*, 626 F.3d at 394. Where, as here, the plaintiff sets forth evidence that discipline for the policy violations is applied unevenly to black employees and other employees, the "legitimate expectations" inquiry "and the pretext question seemingly merge because the issue is the same--whether the employer is lying." *Peirick v. Ind. Univ. - Purdue Univ. Indianapolis Ath. Dep't.*, 510 F.3d 681, 687 (7th Cir. 2007).

### 2. Woods' Failure to Promote Claim

#### a. Direct Method

Woods asserts that she has established racial discrimination on the part of Von Maur for failing to promote her by pointing out that until 2008, Von Maur had never hired a black buyer for the first 136 years it was in business. Woods claims this "inexorable zero" requires denial of Von Maur's motion alone. *See Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 525 n. 4 (7th Cir. 1994) (noting a "100 percent sex-segregated workforce is highly suspicious and is sometimes alone sufficient to support judgment for the plaintiff.")

There are both procedural and substantive problems with Woods' argument. Procedurally, Woods did not present the evidence of Von Maur's historical hiring practices properly. Woods'

7

hiring figures are presented only in response to Von Maur's statement of facts, but not in her own statement of additional facts. (*See* Pl. 56.1 Resp. ¶ 16.) Using such evidence to directly dispute Von Maur's facts is fine, but to be considered as facts affirmatively demonstrating why summary judgment should be denied, Woods' evidence must also appear in her statement of additional facts under the local rules. *See* L.R. 56.1(b)(3)(C) (setting out the procedure for a statement, "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment."); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008) (upholding the district court's refusal to consider the additional facts put forth in response to the movant's statement of facts but not included in the Local Rule 56.1(b)(3)(C) statement of additional facts). Putting this evidence in the statement of additional facts is necessary because Von Maur has no mechanism to "reply" to Woods' responses to Von Maur's facts and thereby dispute the contentions raised in Woods' responses. *See* L.R. 56.1. Rather, the local rules only permit Von Maur to respond to Woods' additional facts under Local Rule 56.1(b)(3)(C). Strict adherence to Local Rule 56.1 is necessary for the Court to determine what facts are disputed and the Court may ignore facts that are not properly presented. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (finding "[b]ecause of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."); *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record."); *Bordelon*, 233 F.3d at 529.

Even if Woods had presented her evidence correctly and Von Maur could not refute it, it would be insufficient to get past the summary judgment using the direct method. Woods is correct

that not hiring a black buyer for most of its history should be considered as direct evidence of discrimination. *See Loyd.*, 25 F.3d at 525 n. 4. But the lack of context for Woods' "inexorable zero" assertion nearly eviscerates any persuasive value it may have. First, she does not present evidence of how many black people applied to be buyers during that period or what their qualifications were for the position. While the Court doubts that no black people applied for a buyer position in that 136 year period, the Court cannot simply assume discrimination without some comparative basis. Further, Woods has not demonstrated that 1872 to 2008 is the appropriate timeframe to consider her argument. She has not demonstrated that the position of buyer existed before 1991. (*See* Pl. 56.1 Resp. ¶ 16 citing Huan Dep. at 17-22.) Indeed, the deposition testimony underpinning Woods' claim is based on the current personnel records at Von Maur and the recollection of one (albeit long-tenured) employee. (*Id.*) Moreover, for most of its history, Von Maur had a single store; it only expanded relatively recently.

The caselaw cited by Woods supporting her "inexorable zero" argument does not support Woods' implicit assumption that the inexorable zero contention may be divorced from any consideration whatsoever of the circumstances of how it arose, including some consideration of the qualifications of the workers allegedly excluded from a particular job because of discrimination. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 342 (U.S. 1977) (placing the "inexorable zero" argument in the context of minority drivers not receiving a specific driving position even though the Government demonstrated they were "willing to work, had access to the terminal, were healthy and of working age, and often were at least sufficiently qualified to hold city-driver jobs."); *Jabrocky v. Jewel Food Co.*, 773 F.2d 857, 868 n.7, 869 (7th Cir. 1985) (finding men were placed exclusively in the entry level job with no qualifications while women were placed in a different entry

9

level job with no qualifications and noting the "sex segregation of the job classifications in 1980 raises a very strong inference that the Union, as well as Jewel, was discriminatorily motivated, especially because no special qualifications are needed to become an apprenticed as a meat cutter."); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1177 (7th Cir. 2002) (finding that evidence that no black people were hired over a two-year period was "next to worthless" without knowing "the number and race of the candidates applying for those positions, and the candidates' relative qualifications.") In short, Woods' unadorned "inexorable zero" contention is too under-developed to demonstrate discrimination under the direct method.

Woods' other direct evidence of discrimination also fails to establish a triable issue material issue of fact under the direct method. She points out that her family members were followed around the Glenview store and watched closely because they were black. (*See* Pl. 56.1 Resp. ¶ 20.) But circumstantial evidence that has little if any connection to Woods' claim that she was not promoted based on her race. *See Montgomery*, 626 F.3d at 393-94 (finding evidence that racial harassment from co-workers does not "constitute evidence allowing a jury to infer a "discriminatory motive behind [plaintiff's] demotion."); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) ("circumstantial evidence . . . must point directly to a discriminatory reason for the employer's action . . . bigotry per se is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action."). Woods cannot survive summary judgment under the direct method.

        **b.**        **Indirect Method**

To establish a prima facie case that she was not promoted because of her race, Woods must establish (1) she was a member of a protected class; (2) she applied for and was qualified for the

position sought; (3) an adverse employment action (that she was not promoted); (4) the continued availability of that position to others of like qualifications. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008). There is no question that Woods has met the first and third prongs. As to the second prong, Von Maur asserts that Woods did not formerly apply to be a buyer, but Woods states that she expressed interest in the position and points to deposition testimony from Rotert suggesting that expressing such interest was enough. (*See* Doc. 65-4, Rotert Dep. at 223-24.)[3] Further, her employment file reflected her interest in a buyer position. (*See* Doc. 65-45.) As to her qualifications, it appears she met the minimum requirements for the position. At her deposition, Rotert conceded that someone with a year experience buying for another company and who was meeting expectations on her performance reviews at Von Maur would be eligible to interview. (*See* Rotert Dep. at 237-40.) Woods met both those qualifications.

However, it is undisputed that Woods was a part-time employee that never held any supervisory position with the company. Most importantly, it is undisputed that Von Maur has never hired a part-time worker that was not previously in a full-time supervisory role for a buyer position. Though she was minimally qualified for the position, Woods cannot show that the position was available to other part-time employees that did not have a supervisory role or that someone with her qualifications was hired instead. Woods points to Sue Curtain, a white employee who worked part-time before becoming a buyer. (Pl. 56.1 Resp. ¶ 18.) But Curtain followed the well-trod path to buyer, first becoming a full-time employee and then moving to a supervisory role before being

---

[3] Again, Woods did not present this evidence properly, only including it in a response to one of Von Maur's facts. Woods should have included her assertions that she applied to be a buyer by expressing her interest to HR representatives and her supervisors (and that expressing such interest was enough) in her Local Rule 56.1(b)(3)(C) additional facts so that Von Maur could have an opportunity to respond. As laid out below, this procedural failure is not fatal to her claim because she cannot establish the fourth prong of the prima facie case or that Von Maur's reason for not promoting her was pretextual.

promoted to buyer. (*See* Doc. 64-4, Jaggi Dep. at 219-20.) Curtain was not treated better than Woods.

For the same reason, Woods cannot also demonstrate a triable issue of fact that Von Maur's reason for not promoting her to buyer—she was part-time and not a supervisor—was pretextual. "Pretext is a lie, specifically a phony reason for some action." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008). "To show pretext, a plaintiff must show that (1) the employer's nondiscriminatory reason was dishonest; and (2) the employer's true reason was based on a discriminatory intent." *Id.*; *see also Alexander*, 263 F.3d at 683 (explaining that the only question on summary judgment with respect to pretext is "whether the plaintiff has provided enough evidence from which a rational trier of fact could infer that the employer's stated reasons for taking hte adverse action were lies.") As long as Von Maur honestly believed its reason for not promoting Woods, Woods cannot survive a motion for summary judgment. *See Adams*, 324 F.3d at 940; *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001). Von Maur, without exception, hired only full-time supervisors to be buyers. Woods was part-time and not a supervisor. In essence, Woods wanted to skip a few of the steps Von Maur set up on the path to the buyer position. Whether Von Maur's practice of hiring buyers exclusively from the pool of full-time supervisors was right or wrong is not for the Court to decide. *Id*. (even "foolish or trivial or even baseless" reasons are not pretextual as long as they are honest); *see also Hudson v. Chicago Trans. Auth*., 375 F.3d 552, 561 (7th Cir. 2004) (the Court does not "sit as a super-personnel department that reexamines an entity's business decisions"). In short, while Woods can show she met the minimum requirements to be a buyer, she cannot show Von Maur's reason was pretextual because Von Maur was merely following its own usual hiring practice for buyers.

### 3. Woods' Termination Claim[4]

To establish her claim for termination based on racial bias using the indirect method, Woods must demonstrate she is in a protected class, she performed her job according to her employer's legitimate expectations, she was fired, and similarly situated employees were treated better (namely, not fired). *See Gordon*, 246 F.3d at 885-886. It is undisputed that Woods is black and she was fired, so only the second and fourth *McDonnell* prongs are at issue in this case. Further, as is common in termination cases, the issue of whether Woods was meeting Von Maur's expectations is the flipside of whether Von Maur's reason for firing her, for violations of the employee purchase policy, was pretext. *See id.* (the "issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext.") Consequently, there are two issues for the Court to decide: (1) whether similarly situated employees were treated better than Woods; and (2) whether Von Maur's termination of Woods was pretextual.

#### a. Similarly Situated Employees

Where a plaintiff claims she was disciplined more harshly than a similarly-situated employee not in the protected class,

> a plaintiff must show that [she] is similarly situated with respect to performance, qualifications and conduct. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

---

[4]Because the Court finds that Woods can establish a triable issue of fact that she was fired based on her race using the indirect method, the Court does not analyze Woods' evidence under the direct method.

*Peters v. Renaissance Hotel Op. Co.*, 307 F.3d 535, 546 (7th Cir. 2002) (quoting *Radue v. Kimberly-Clark*, 219 F.3d 612, 618 (7th Cir. 2000)). The similarly situated standard "should not be applied mechanically or inflexibly." *Peirick*, 510 F.3d at 688 (cautioning that "[i]t is important not to lose sight of the 'common sense' aspect of this inquiry. It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees"). Both the Von Maur's and Woods' briefs focus the similarly-situated analysis on two non-black employees, Likeover and David.[5] Likeover and David were two employees that Von Maur concedes violated the price adjustment policy in the same fashion or with the same severity as Woods but were not fired by Jaggi when Jaggi was the Glenview store manager. (*See* Doc. 57 at 12.) Von Maur insists that neither Likeover or David are similarly situated as Woods because they worked at Von Maur for six days and 11 months, respectively, when they violated the policy, as opposed to Woods' five years.[6] While length of employment can be a differentiating factor (*see Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)), Likeover violated the policy within days of signing an acknowledgment that she understood the policies and presumably when the policies were fresh in her mind. (*See* Jaggi Dep. at 150-51.) As for David, a rational jury could find that an employee should have a sufficient understanding of the employee price adjustment policy after almost a year on the job, or the same understanding as someone on the job five years. In short, Woods has demonstrated a triable issue of fact that the length of Likeover and David's employment does not differentiate them from Woods

---

[5]Von Maur's brief lists David as Asian, and Woods lists her as white. (*Compare* Doc. 57 at 12 to Doc. 67 at 12.) For the purposes of this analysis, the only thing that matters is that both are not black.

[6]Other evidence offered by Von Maur differentiating Woods from David and Likeover is disputed. For instance, Von Maur asserts Woods was counseled regarding previous violations of the employee purchase policy, but Woods claims she was not. Also, Von Maur asserts that one of Likeover's transactions was less serious because she bought the item she returned while an employee before she became an employee. But another of Likeover's problematic transactions took place fully within her employment. (*See* Doc. 65-5, Jaggi Dep. at 149-151.)

14

with respect to the employee purchase policy, and consequently that a similarly situated employee was treated better.

### b. Pretext

Finally, Woods has shown that a rational jury could find that her firing was pretextual. As noted above, there is some question as to whether Von Maur fired Woods for something non-black employees were not fired for. *See Gordon*, 246 F.3d at 892 (evidence that similarly situated employees were treated better may allow a rational jury to find pretext). More fishy was Von Maur's investigation into Woods' employee price adjustment policy violations. When confronted with evidence of the transactions, Woods responded that Ivory gave her permission to make one of the two problematic transactions. But no one ever asked Ivory about that transaction or whether she gave Woods permission to do it. (*See* Doc. 65-13, Ivory Dep. at 27.) Nor did anyone discipline or reprimand Ivory for approving Woods' purportedly improper transaction. (*Id*.) Rotert conceded at her deposition that it may be appropriate to question the supervisor in such a situation. (*See* Rotert Dep. 52-54.) That Von Maur did not follow up on an obvious line of investigation allows an inference, sufficient to defeat summary judgment, that the purchase was a pretext for firing Woods based on her race. A district court in Michigan reached the same conclusion in a nearly identical fact pattern in another Title VII termination case against Von Maur. *See Ragland v. Von Maur, Inc.*, No. 08-11783, 2011 WL 1139330, at *5 (E.D. Mich. Mar. 24, 2010) (finding Von Maur's failure to question the associate who handled the transaction in question created an issue of fact as to whether the employee's firing was pretextual). A rational jury could find that Von Maur's explanation for Woods' firing was pretext for a discriminatory motive.

### B. Retaliation (§ 1981)

Finally, Woods also brings a claim under § 1981 for retaliation, alleging that she was fired because she complained to various managers about racial discrimination at Von Maur, specifically that on several occasions store employees followed her family members around the store because they were black. Section 1981 permits retaliation claims by "a person who has complained about a violation of another person's contract-related right." *CBOCS West Inc. v. Humphries*, 553 U.S. 442, 445 (2008).[7] A plaintiff may show discriminatory discharge under § 1981 by the direct method or the indirect method. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) ("We apply the same elements to retaliation claims under Title VII and § 1981.")[8] Under the indirect method, the plaintiff must first show a prima facie case of retaliation, which requires her to produce admissible evidence that (1) she engaged in a statutorily protected activity, (2) the defendant took a materially adverse action against her, (3) she was performing her job satisfactorily, and (4) she was treated worse than a similarly situated employee who did not complain of discrimination. *See id.* at 786-87. She must then show pretext, as with her racial discrimination claims. *See id.* at 787. For the same reasons above, Woods has shown the first, second and third prongs, as well as pretext. As for the fourth prong, Von Maur asserts that prior to Woods' lawsuit, no Von Maur employee ever filed a formal or informal complaint for racial discrimination, and Jaggi never had an employee come to her to complain about racial discrimination. Consequently, the employees that are similarly situated to

---

[7] Von Maur asserts that Woods' § 1981 claim fails because she did not complain of an activity that violates § 1981. The Court agrees that merely following a black customer around the store does not violate § 1981. *See Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir. 1996) (finding no § 1981 violation where the plaintiff was not denied admittance to the store or service by store employees, or asked to leave the store). However, that is not the test for retaliation claims. *See Hamner v. St. Vincent Hosp.*, 224 F.3d 701, 706-07 (7th Cir. 2000) (finding an employee may engage in statutorily protected expression even if the challenged practice does not actually violate the law, as it is "sufficient if the plaintiff has a sincere and reasonable belief that he is opposing an unlawful practice.") Woods' belief that following black customers around the store based on their race was illegal was reasonable.

[8] As before, because Woods defeats summary judgment via the indirect method, the Court does not consider Woods' arguments on the direct method.

Woods and were not fired and did not complain (at a minimum, Likeover and David) were treated better than Woods. Von Maur is not entitled to summary judgment on Woods' retaliation claim.

IV.  CONCLUSION

For the foregoing reasons, the Court grants Von Maur's motion for summary judgment (Doc. 56) in part and denies it in part. The Court enters summary judgment in favor of Von Maur on Woods' failure to promote claim, but Woods' remaining claims must proceed to trial.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 24, 2011