IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| MARY WOODS | | ) | Case No. 09 C 7800 |
| | Plaintiff, | ) | |
| v. | | ) | Judge Virginia M. Kendall |
| | | ) | |
| VON MAUR, INC. | | ) | |
| | Defendant. | ) | |
| | | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Woods sued her former employer, Von Maur, Inc. ("Von Maur"), a department store chain, alleging that Von Maur terminated her because of her race and because she complained about racial profiling of members of her family while they shopped at Von Maur. Following the close of evidence at trial before a jury, Von Maur orally moved for judgment as a matter of law as to liability and Woods orally moved for judgment as a matter of law as to mitigation of damages, both of which were denied. A jury returned a verdict for Von Maur as to Woods' discrimination claim, a verdict for Woods as to her retaliation claim, and determined that Woods failed to mitigate damages. Von Maur now renews its motion for judgment as a matter of law, and moves in the alternative for a new trial, as to Woods' retaliation claim. Woods moves for judgment as a matter of law with respect to Von Maur's defense of failure to mitigate (and in the alternative for a new trial), and also moves for the application of prejudgment interest to back pay damages and for the equitable remedies of reinstatement or front pay.

**I. FACTS**

For purposes of a motion for judgment as a matter of law, all inferences are drawn in favor of the non-movant Woods.  Woods' retaliation claim arises out of a complaint she made during the spring of 2007 to her supervisor Katie Tucker and to other personnel at Von Maur.  Von Maur hired Woods in 2003.  (11/14/11 Trial Tr. 221). Katie Tucker was Woods' floor manager starting in 2004, and Gwen Ivory her department manager (11/14/11 Trial Tr. 223-4).  Ivory drafted Woods' annual performance reviews in 2005, 2006 and 2007.  (11/14/11 Trial Tr. 227-8).  Tucker did not draft the reports, but signed off on them as manager. (11/14/11 Trial Tr. 228, 11/16/11 p.m. Trial Tr. 44, 49).  In each of those years, Woods received a "fully meets expectations" rating from Ivory, approved by Tucker.  (11/14/11 Trial Tr. 231-234).

Woods generally liked her job at Von Maur, and enjoyed working in retail, but she did notice on several occasions conduct that Woods believed suggested that Von Maur employees treated African-American customers differently than white customers. (11/14/11 Trial Tr. 265).  In spring of 2007, Von Maur witnessed her family members come into the store, only to be followed around the store by Tucker, including up escalators and between departments.  (11/15/11 Trial Tr. 47-49).  Woods believed that Tucker's actions were "blatant racism."  (11/15/11 Trial Tr. 134). Tucker followed Woods' family until Woods intervened and introduced the customers to Tucker as family members and mentioned that she hoped that they had not been followed because they were black.  (11/15/11 Trial Tr. 51).  Woods raised the incident again with  Tucker, and  with human resources manager Michelle Neurath, each within the week following the incident, and stated that she hoped that the customers were not being followed around the store on account of

2

their race.  (11/15/11 Trial Tr. 45-46, 51, 53).  Neither Tucker nor Neurath took any notes of the conversations in Woods' presence, and Woods never received a follow-up call from management regarding the complaint.  (11/15/11 Trial Tr. 54).

As part of her employee benefits, Woods had a 20% employee discount on merchandise that she purchased for herself or for her family. (11/14/11 Trial Tr. 242).  Woods used her discount often, and occasionally made returns.  *Id.*  On July 12, 2008, Von Maur terminated Woods on account of two employee discount price policy violations.  (Plaintiff Trial Ex. 16 at 5). As to the first alleged violation, Woods bought a sweater at a price of $43 on May 31, 2008.  Two weeks later, she purchased a second sweater for her sister, who wears the same size, for $29. (11/14/11 Trial Tr. 248-49).  Her sister did not like the sweater and asked Woods to return it.  Woods returned the higher-priced sweater, as neither had been worn and both had their tags. (11/14/11 Trial Tr. 248-49).  There was no written policy at Von Maur that made this action a violation of employee policy (11/14/11 Trial Tr. 251).  As to the second violation, on June 20, 2008 Woods purchased a blouse for $52 (minus her discount).  She returned it 10 days later after deciding she did not like the blouse, and received a refund, again minus her discount (11/14/11 Trial Tr. 253). When Ivory stopped by a few days following Woods' return of the blouse, pointed out that the blouse had been marked down to $19, and recommended that Woods buy it, she purchased it again.  (11/14/11 Trial Tr. 254). Again, there was no policy at Von Maur that barred Woods' purchase and re-purchase of the blouse.  (11/14/11 Trial Tr. 256)  Woods did not work the shift that made initial markdowns, so she did not know when she returned the blouse that it would soon be marked down.  (11/14/11 Trial Tr. 254).

3

Elizabeth Jaggi was the Glenview store manager at the time of Woods' termination. Jaggi testified she received a call from the Von Maur corporate office after their computer system flagged the sweater and blouse transactions as suspicious use of the employee discount privilege. (11/16/11 a.m. Trial Tr. 170). Jaggi testified that it was standard practice at Von Maur to contact the floor manager of the floor on which an employee worked when the computer system flagged a price adjustment abnormality, and discuss the incident and a good time for meeting with the employee. (11/16/11 a.m. Trial Tr. 171-72). The floor manager would take notes as Jaggi conducted her interview investigation with the employee. (11/16/11 a.m. Trial Tr. 173). Jaggi testified that she alerted Tucker to the transactions, discussed them with her, and that Tucker was present and taking notes during the meeting with Woods. (11/16/11 a.m. Trial Tr. 177-78, 189-90. 194. 196). According to Woods, Jaggi told Woods at the investigatory interview that she would investigate the incidents, and Woods both provided the explanation as to the sweater purchase, and advised Tucker and Jaggi that they should speak with Ivory, who would confirm that she suggested that Woods repurchase the blouse. (11/14/11 Trial Tr. 258). Woods also testified that she did not at any point claim that the blouse had been "damaged out." *Id.*

Nine days later, Jaggi called Woods into her office and advised her she was being terminated due to the two violations of the price adjustment policy. (11/14/11 Trial Tr. 260-61). Woods did not remember whether she mentioned to Jaggi at the termination meeting that she believed she was being terminated on account of her reporting her observations about the treatment of African-American customers, although she was certain she told Jaggi that her termination was unfair. (11/15/11 Trial Tr. 170). Ms. Nadovi, another floor manager, was present

4

at the second meeting instead of Ms. Tucker (who was not working that day) and testified that at the second meeting, Woods mentioned that Jaggi should speak with Ivory about the blouse. (11/17/11 a.m. Trial Tr. 86).

Jaggi confirmed on examination that Tucker was involved in all parts of the investigation. (11/15/11 a.m. Trial Tr. 89). Jaggi also confirmed that termination for employee price adjustment violation was not mandatory, but discretionary based upon her investigation. Jaggi testified that she did not review Woods' personnel file, take into account the positive annual reviews, or talk to Ivory about the return and repurchase of the blouse (11/16/11 a.m. Trial Tr. 99, 102). Jaggi also testified that even if she had talked to Ivory and Ivory had verified Woods' story that Ivory gave her permission to repurchase the blouse, Jaggi still would have recommended that Woods be fired. (11/16/11 a.m. Trial Tr. 119). Woods presented evidence that two other employees, each of whom were white, committed violations of the price policy (in one case, by ringing up her own discounted merchandise, and in another, by using a store credit card to purchase, but neither employee was terminated. (11/15/11 Trial Tr. 77). The two white employees were not fired after investigation by Jaggi, while two black employees were fired following price adjustment violations. (11/15/11 Trial Tr. 246-48, 11/16/11 a.m. Trial Tr. 121-35).

Amy Rotert, the regional manager for Von Maur, ultimately approved Jaggi's recommendation to terminate Woods. Rotert testified that she relied on Tucker's notes of the meeting between Tucker, Jaggi, and Woods, which notes contained no reference to any explanation as to the sweater, and listed by way of explanation of the blouse that Woods claimed the blouse had been "damaged out." (11/17/11 p.m. Trial Tr. 34-35). Rotert also relied on Tucker's call to

5

report that the "damaged out" explanation did not match the computer records. Rotert testified that if there had been an explanation for a supposed violation, that is something that should have been communicated to her in evaluating a decision to terminate. (11/17/11 p.m. Tr. Trans. 39-40).

Following termination, Woods managed to pick up some additional shifts at her other job as patient services assistant for a psychiatrist's office, but was unable to find a second job to replace her part-time job at Von Maur until April 2009. (11/15/11 Trial Tr. 66). In April 2009, she obtained a part-time position at Home Goods, making $7.75 per hour, down from $10.50 per hour plus 1% commission at Von Maur. (11/15/11 Trial Tr. 65, 70). After two months, Woods left the Home Goods job as the hours were less than she had hoped and the commute too onerous. (11/15/11 Trial Tr. 66).

## II. LEGAL STANDARD

After a jury has returned a verdict, a non-prevailing party that moved for judgment as a matter of law during the course of the trial may renew that motion pursuant to Federal Rule of Civil Procedure 50(a) and request that the court enter judgment in its favor notwithstanding the jury's verdict. Fed. R. Civ. P. 50(b). If "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [prevailing] party," it may enter judgment as a matter of law for the non-prevailing party. Fed. R. Civ. Proc. 50(a) and 50(b).

When deciding a renewed motion for judgment as a matter of law, a court's review is "limited to determining only whether any rational jury could have found for the plaintiff, examining all evidence in the record to make that determination." *Hicks v. Forest Pres. Dist. of Cook County, Ill.,* – F.3d –, 2012 WL 1324084 at *3 (7th Cir. 2012) (citing *Reeves v. Sanderson Plumbing*

6

*Prods, Inc.*, 530 U.S. 133, 150 (2000)). A court considering a motion for judgment as a matter of law must limit its inquiry "to whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed...." *Mathur v. Bd. of Trs.*, 207 F.3d 938, 941 (7th Cir.2000) (internal citations omitted). The court may not "step in and substitute its view of the contested evidence for the jury's." *Id.* (citation omitted); therefore, the court may not re-weigh the evidence, resolve conflicts in the testimony in favor of the movant, or override the jury's determinations as to the credibility of witnesses. *See, e.g., Hicks*, 2012 WL 1324084 at *3; *David v. Caterpillar, Inc.*, 324 F.3d 851, 858 (7th Cir. 2003); *EEOC v. Bd. of Regents of Univ. of Wis. Sys.*, 288 F.3d 296, 301 (7th Cir. 2002).

In the alternative to granting a motion for judgment as a matter of law, a court may grant a new trial pursuant to Federal Rule of Civil Procedure 59(a), "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). As with a motion for judgment as a matter of law, a jury verdict shall be upheld "as long as a reasonable basis exists in the record to support this verdict." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010). "A new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (citations omitted).

## III.  VON MAUR'S MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO LIABILITY

To prevail in a claim for unlawful retaliation, a plaintiff must prove by a preponderance of the evidence that:  (1) she opposed an unlawful employment practice; (2) she suffered an

adverse employment action; and (3) the adverse employment action was caused by her opposition to the unlawful employment practice. *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008) (citing *David*, 324 F.3d at 858). A plaintiff alleging retaliation by her employer may prove her case by either the "direct" or "indirect" methods; following trial, however, the method of proof need not be addressed, because "after a full trial, the only pertinent question is whether there was enough evidence to permit the jury to consider the ultimate questions of discrimination and retaliation." *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 708 (7th Cir. 2004).

As explained in closing argument and also in Woods' response to the Motion, Woods proceeded at trial on the theory that Tucker, while not the decisionmaker who terminated Woods, had a retaliatory motive against Woods on account of Woods' complaint that Tucker racially discriminated against customers, and that Tucker's actions during the investigation of Woods were intended to cause, and did cause, Woods' termination. Under the 'cat's paw' theory recently articulated by the United States Supreme Court, an employer can be liable for retaliation even if the ultimate decisionmaker did not retaliate, if a supervisor "if a supervisor performs an act motivated by a discriminatory or retaliatory animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable. *Hicks*, 2012 WL 1324084 at *6 (citing *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1194 (2011)); *see also Palermo v. Clinton*, 457 Fed. Appx. 577 (7th Cir. 2012). The actions of the retaliating supervisor need not be *the sole* cause for termination; rather, the supervisor's actions must be "causal factors" underlying the ultimate determination in order to be considered as proximate cause. *See Staub*, 131 S.Ct. at 1192, 1194.

8

Drawing all inferences in favor of Woods, a reasonable jury weighing all of the evidence and assessing the credibility of the witnesses during live testimony could find that Tucker used Jaggi as her cat's paw to terminate Woods. The jury was entitled to credit the testimony of Woods that she told several people, including Tucker directly, about the 2007 incident in which Woods believed that Tucker had discriminated against Woods' friends and family by tailing them throughout the store while they shopped. Von Maur had a policy that complaints of discrimination should be reported and taken seriously, and the defense did not refute Jaggi's and Rotert's testimony that they did not know about Woods' complaint. A jury crediting Woods' version of events could reasonably infer that Tucker did not tell her supervisors about Woods' complaint - the complaint against *Tucker herself* for discriminatory conduct that Von Maur, her employer, would undoubtedly have taken seriously. It is a reasonable inference by a jury following an evaluation of the credibility of Tucker's testimony against Woods' testimony that Tucker harbored animus against Woods for having maligned Tucker with such an accusation.

A reasonable jury could likewise find on the facts in evidence that Tucker committed an act intended to cause Woods' termination. Tucker spoke with Jaggi several times about the investigation, participated in the investigatory meeting of Woods in which Woods gave reasonable explanations for those purchases that had the corporate system had flagged, and took incomplete and arguably false notes that left out or incorrectly reported Woods' explanations. A reasonable jury could have credited Woods' detailed testimony about the explanations she gave at the time of the investigatory interview, rather than Jaggi's and Tucker's testimony that those explanations

were never provided. Likewise, a jury could reasonably draw the inference that Tucker's failure to record the explanations in her notes was an act intended to cause Woods' termination.

Finally, a reasonable jury could have determined that Tucker's act proximately caused Woods' termination, and that Tucker's animus may therefore be imputed to Jaggi and Rotert. Jaggi testified that Tucker was involved in all aspects of the investigation, and Rotert testified that she relied upon Tucker's notes of the investigatory meeting, as Tucker's call to report that the "damaged out" explanation did not match store records, in approving Jaggi's recommendation that Woods be terminated. *See Hicks*, 2012 WL 1324084 at *3 (finding jury determination of retaliatory animus by supervisor could be imputed to the employer under the 'cat's paw' theory when ultimate decisionmaker relied upon reviews provided by the supervisor found to have animus). A jury could have believed Rotert that she might have viewed the recommendation to terminate differently had she known that Woods provided a reasonable explanation of why the price adjustments occurred as they did, such that the flags did not, in fact, indicate any violation or intent to violate the employee discount privilege.

Finally, Woods presented evidence that similarly situated employees who had committed similar price adjustment violations were not terminated. Von Maur attempts to discredit this evidence because Woods presented it in support of the discrimination claim (which the jury decided in favor of Von Maur); however, viewing the totality of the evidence, at the close of trial and in deliberation a reasonable jury could very well have determined that while Woods' evidence of similarly situated employees did not sustain a race-based discrimination claim, that evidence

10

did circumstantially support an inference that employees who did not speak out about discriminatory treatment were not terminated.

Von Maur relies heavily upon the 14-month delay between Woods' complaint about discrimination against customers and Woods' termination, and urges this Court to make a blanket assessment that 14 months is too long a period for a retaliation claim without substantial additional evidence of causation. While 14 months may be a long, it is not *per se* determinative of Woods' claim, if other evidence has been presented. *See Hicks*, 2012 WL 1324084 (delay of twenty-two months acceptable in light of additional evidence). When combined with the fact that Woods was fired within days of a single price adjustment issue for which Woods gave what the jury could find to be a credible explanation, but which explanation was not recorded, credited, or investigated by Tucker, with no other review of Woods' numerous positive performance reviews, the length of time alone does not justify overriding the jury's determination that the weight of the evidence supports a finding of retaliation.

## IV. WOODS' MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO DAMAGES

Woods orally moved for judgment as a matter of law on the defense of mitigation at the close of Von Maur's case before the jury, on grounds that Von Maur failed to provide evidence in support of its affirmative defense of Woods' failure to mitigate her damages. After the Court denied Woods' oral motion and sent the case to the jury, the jury (1) awarded Woods $46,015.00 in back pay, (2) found that Woods had earned $800 since her termination, and (3) found that Woods had failed to mitigate her damages in the amount of $35,107 - leaving Woods with an ultimate back pay award of $10,108.00. Woods reiterates her motion for judgment as a matter of

law as a post-trial motion pursuant to Federal Rule of Civil Procedure 50(b), and seeks in the alternative a new trial on the issue.

In order to prove an employee's failure to mitigate, the employer must show both that the plaintiff was not reasonably diligent, and that with the exercise of reasonable diligence, there was a chance that the plaintiff might have found comparable employment. *See, e.g., Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037 (7th Cir. 1994) (setting standard); *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th Cir. 1990) (same). Woods lost her position at Von Maur in July 2008, and found alternate employment in April 2009 at Home Goods, another retail store 2 miles away. Woods presented evidence that she earned approximately $13,000 per year from her job at Von Maur. The jury awarded her back pay from 2008 until the trial, and then reduced her back pay to the equivalent of 9 months of no work - exactly the amount of time that Woods lacked work between her termination from Von Maur and the job she obtained at Home Goods.

Wood is correct that Von Maur did not provide evidence "concerning the availability of comparable jobs," *Gurnee Inn*, 914 F.2d at 818. But Von Maur did not need to provide it. Woods herself provided the evidence that comparable jobs were available – because she got one of them. Woods testified that after a diligent search, she obtained the position at Home Goods in April of 2009, a retail establishment. She then testified that she resigned from it voluntarily 2 months later because she did not yet have the full number of hours that the employer had told her would be provided to her. On cross-examination, Woods admitted that although she cited gasoline prices and reduced hours as the reason she left the position, the Home Goods job was a mere two miles from the Von Maur job.

12

The jury deserves more credit for their analysis, as the jury's initial award, followed by subtraction based on Woods' conduct, is consistent with both the theory argued to the jury by Von Maur, and consistent with the jury instructions provided. This court will not overturn a jury's determination, consistent with the evidence provided to it, that Woods should be compensated with back pay for the period in which she sought work but could not find it, but should not be compensated after she voluntarily resigned after only two months from a replacement job in a similar industry and a similar location.

## V. PREJUDGMENT INTEREST, REINSTATEMENT, AND FRONT PAY

Finally, Woods moves for prejudgment interest on her back pay award, as well as the equitable remedy of reinstatement to her position at Von Maur or, in the alternative, an award of front pay.

Because Woods is entitled to only $10,078[1] in back pay for the reasons set forth above, prejudgment interest shall be calculated based on this revised amount, from the date of Woods' termination until the date of entry of the jury's verdict. As the parties agree that interest should be compounded monthly at the rate of 3.42%, Woods shall receive prejudgment interest in the amount of $1,225.40.

Reinstatement is an equitable remedy, and, as such, is decided by the judge rather than the jury. *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951 (7th Cir. 1998). When granted as an alternative to reinstatement because reinstatement is unavailable or infeasible, front pay is also an equitable

---

[1] In calculating back pay of $10,108, the jury found that Woods earned $800 at Home Goods. Based on the W-2 provided as a trial exhibit, Woods earned $830.28, and neither party contests the accuracy of this amount. For purposes of calculation of interest, the Court uses the amount provided on the W-2.

remedy. *Id.* "An award of front pay compensates an unlawfully discharged employee for the loss of earnings that he sustains as a result of the discharge." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 771 (7th Cir. 2006) (citing *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001)). As with back pay, a duty of mitigation exists, such that the employee must make a diligent search for comparable employment. *Id.*, citing *Williams*, 137 F.3d at 954.

With respect to Woods' request for reinstatement, in light of the evidence presented at trial, the Court declines to order that Woods be reinstated at Von Maur. As Woods herself argued in response to Von Maur's Motion for Judgment as a Matter of Law, a supervisor can be held liable for retaliation if the supervisor's actions are one of the "causal factors" for termination – but there can be more than one cause for termination of an employee plaintiff. *See Staub*, 131 S.Ct. at 1192. In light of the evidence presented by Von Maur that at least certain of the management employees believed Woods to have been properly terminated on account of the price discount violations, it is unlikely that Woods and Von Maur would be able to work in a position of trust in the future, and reinstatement is not an appropriate remedy.

The jury reasonably concluded that Woods failed to mitigate her damages when she resigned from the alternative employment she had obtained at Home Goods after only two months of work. Awards of front pay are subject to the same requirement of mitigation as awards of back pay. *See Williams*, 137 F.3d at 954. Additionally, Von Maur correctly notes that front pay damages are, in part, designed to compensate a plaintiff for the emotional damage of having suffered retaliation. *See McKnight v. General Motors Corp.*, 973 F.2d 1366, 1371 (7th Cir. 1992) (damages should end on the day when the "wounds of discrimination should have healed"). In addition to

14

finding a failure to mitigate damages, the jury in the case awarded a very small amount to Woods for compensatory and punitive damages - $550 and $20 respectively, signaling the jury's opinion that Woods did not suffer greatly from the emotional pain of having endured discrimination. Therefore, the Court declines to award Woods the equitable remedy of front pay.

## VI. CONCLUSION

A reasonable jury could determine, based on the evidence presented over the course of a week-long trial, that Von Maur terminated Woods not on the basis of her race, but on the basis of the store employees' belief that Woods violated the store's policies. Illinois is an at-will employment state, and Von Maur had the right to terminate Woods for any reason, provided that it did not terminate her on account of her race or other protected status. A reasonable jury could have credited the testimony of store employees who believe the store policies had been violated, and determined that a non-discriminatory basis for termination existed. The same jury could find that although Von Maur had non-discriminatory basis to terminate Woods, that termination in part resulted from retaliation by a store employee against Woods for Woods' protected activity of reporting what Woods believed to be racially discriminatory behavior by her supervisor toward customers. These two jury verdicts are not inconsistent based on the evidence presented at trial. Therefore, Von Maur's motion for judgment as a matter of law, or a new trial, is denied.

A reasonable jury could also determine based on the evidence presented that Woods failed to mitigate her damages following her resignation from subsequent employment; therefore, Woods' motion for judgment as a matter of law, or in the alternative a new trial, is also denied.

Woods' request for prejudgment interest in the amount of $1,225.40 is awarded to Woods, but her request for reinstatement and/or front pay is denied.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 7, 2012

16