IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY WOODS | ) | |
| Plaintiff, | ) | Case No. 09 C 7800 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |
| VON MAUR, INC. | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mary Woods ("Woods" or "Plaintiff") filed a four-count complaint against her former employer, Von Maur, Inc. ("Von Maur" or "Defendant"), a department store chain, alleging that Von Maur terminated her because of her race and because she complained about racial profiling of members of her family while they shopped at Von Maur, in violation of Title VII and 42 U.S.C. § 1981. The two § 1981 claims survived summary judgment. Following a jury trial, a jury found in favor of Von Maur on the racial discrimination claim, and found in favor of Woods on the retaliation claim. The jury awarded Woods $550 in compensatory damages, $20 in punitive damages, and back pay in the amount of $46,015, which the jury then reduced for failure to mitigate for an ultimate award of $10,108. Plaintiff now petitions for attorneys' fees and non-taxable costs in the amount of $226,659.80, a proposed "compromise" award that is reduced by 25% from the actual amount billed by Plaintiff's counsel. Plaintiff's motion is granted in part and denied in part, and the parties are directed to submit an agreed order in accordance with the direction set forth herein.

Von Maur makes three general objections to Plaintiff's proposed fee award: that the fee requested is either wholly inappropriate in light of the nominal nature of Woods' retaliation victory, or at least grossly disproportionate to the minimal damages recovered; that the petition improperly seeks fees for work not properly recoverable - namely, work to advance the unsuccessful claims and work in preparation of the fee petition; and that requested award does not account for Plaintiff's counsel's failure to reasonably assess the case's value in order to further settlement. For the reasons explained below, the Court rejects Plaintiff's proportionality and failure-to-settle objections. The Court sustains in part the objection regarding recovery for unsuccessful claim, and sustains the objection to recovering fees for filing the fee petition.

## **DISCUSSION**

"In any action or proceeding to enforce a provision of [42 U.S.C. §1981] the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . ." 42 U.S.C. § 1988. A party "prevails" for purposes of § 1988 "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.E.2d 40 (1983).

The Court begins by dispensing with Von Maur's passing argument that Woods cannot be said to have "prevailed" on her retaliation claim because the damages she

received should be construed as "nominal." Von Maur focuses on the $500 compensatory damage and $20 punitive damages awarded Woods. These awards standing alone might justify applying case precedent for nominal victories, but Woods also received an award of more than $10,000 in back pay. This $10,000 award cannot be considered "nominal" such as to render the statutory award of attorney's fees pursuant to § 1988 inapplicable. *See Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 194 (7th Cir. 1994) (holding that jury award of $10,000 in back pay for retaliatory discharge "clearly renders Alexander a prevailing party and entitles her to reasonable attorney's fees.") While the proportionality of the award relative to the fee request, or another factor specific to this case, might result in a discretionary reduction of the fee award (as discussed below), complete dismissal of her attorneys' fees in the face of a damages award of this size is not compatible with 42 U.S.C. § 1988 .

A fee analysis begins by with a "lodestar" calculation, calculated as "the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (quoting *Hensley*, 461 U.S. at 433); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). The party requesting the fee has the burden of proving reasonableness of both hourly rate and hours expended. *See Hensley*, 461 U.S. at 437. Von Maur does not challenge the reasonableness of Plaintiff's counsel's billing rate of $330/hour, but rather argues that the

3

hours charged in this case are excessive and do not accurately reflect Woods' failure to prevail on one of her two claims.[1] Courts reduce the lodestar figure, when appropriate, in light of (i) the parties' settlement history; (ii) the proportionality of the fee award in relation to the damages sought and the damages awarded; and the extent of any excessive or unnecessary billing for those claims on which the plaintiff prevailed. *See Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000); *Cole v. Wodziak*, 169 F.3d 486, 487-89 (7th Cir. 1999).[2]

### A. Settlement History

The court should consider any "substantial settlement offer" as one of the factors in awarding fees to the prevailing party, because fees incurred after rejection of a substantial settlement offer generate little benefit to the party, even if that party ultimately prevails. *See Moriarty*, 233 F.3d at 967. Offers that roughly equal the amount awarded to the plaintiff at trial are considered "substantial," but courts may evaluate a settlement offer in light of the circumstances and decline to adjust the lodestar calculation on that basis. *See Moriarty*, 233 F.3d at 967 (discussing settlement offers among factors to consider). In this case,

---

[1] Reasonable fees for electronic research are appropriately recoverable as part of a motion for attorneys' fees. *See e.g. Rasic v. City of Northlake*, 2010 WL 3365918 (N.D. Ill. Aug. 24, 2010) (Schenkier, J.) (citing *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994). In a case that stretched more than two years, with material briefing and a three-day trial, Woods' electronic research costs of less than $1,000 are reasonable and are approved.

[2] Von Maur makes additional arguments regarding the existence and the terms of Woods' contingency fee relationship with her attorneys. District courts are not to consider the contingency nature of the relationship between a plaintiff and her attorney when determining the reasonableness of statutorily awarded fees. *See Pickett*, 664 F.3d at 643-44 (reversing district court for reducing award on the basis of a contingency relationship, and noting "A district court may not rely on a contingency agreement to increase or decrease what it determines to be a reasonable attorney's fee.") (quoting *Van Gerven v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2001). In accordance with the guidance provided by *Pickett*, the Court will address the reasonableness of Woods' fee request under the traditional factors for adjusting the lodestar analysis rather than speculating about the nature of Woods' engagement with her counsel.

Plaintiff Woods ultimately received a jury damage award of $550 in compensatory damages, $20 in punitive damages, and $10,108 in back pay, for a total award of $10,678. Von Maur alleges that it made a settlement offer of $15,000 at the start of the case, and reiterated that offer two more times during the case, including once following partial denial of summary judgment, and once following the pretrial conference. (Resp. At 8). Woods alleges that she made a pre-complaint offer of $45,000, which amount approximates the amount of back pay the jury awarded to Woods (prior to reducing the award by approximately $35,000 for failure to mitigate damages), which offer Von Maur rejected without counter-proposal. Woods also alleges that Von Maur refused to come above $10,000 until after the rejection of summary judgment, at which point Von Maur refused to come above $15,000, and alleges that the agreed-upon mediator of a 2010 mediation recommended settlement at $65,000 (Reply at 5-6).

While the Court is troubled that the parties did not reach a settlement in this case given the limited disparity between the offers early in this case, the Court cannot find on the basis of the parties' disputed statements about who-offered-what-when that Woods unreasonably rejected a settlement offer. At the time of the initial offer of $10,000, Woods had filed multiple claims for both discrimination and retaliation. After mediation, extensive discovery, and voluminous briefing, two of those claims survived summary judgment and proceeded to trial, at which point there existed a genuine likelihood that

the Plaintiff would prevail and receive attorneys' fees. Yet Von Maur continued to refuse to raise its offer in any substantial sense. *See, e.g., Catalan v. Mortgage Co.*, 2009 WL 2986122 at *35 (N.D. Ill. Sept. 16, 2009) (Dow, J.) (commenting that "defendants did not return to the bargaining table in any meaningful sense at any point" between plaintiff's initial rejection and the trial, and concluding that "both sides must share in the responsibility for generating" the legal fees). The Court declines to conclude that refusal of $15,000 offer after the start of the case was unreasonable, and cannot conclude that Plaintiff should have wholly discounted fees already incurred in rejecting the same $15,000 offer on the eve of trial.

### B. Proportionality

Second, Von Maur asserts that the $10,678 awarded by the jury to Woods for retaliation is grossly disproportionate to the size of Woods' requested fees. Fee requests that are greatly disproportionate to the amount of damages awarded can be a "red flag," merely measuring fees against damages does not determine whether the fees are reasonable. *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009) ("Reasonableness has nothing to do with whether th district court thinks a small claim was 'worth' pursuing at great cost. Fee-shifting statutes remove this normative decision from the court. If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing.") A comparatively large fee request merely

6

suggests that the Court look more closely toward the source of the large fees, as a small damage award might suggest a case of little complexity. *See id.* at 546. However, the Seventh Circuit has refused to adopt "any mechanical rules requiring that a reasonable attorney's fee be nor greater than some multiple of the damages claims or recovered," *Moriarty*, 233 F.3d at 968, and "it is absolutely permissible to spend $100,000 litigating what is known to be a $10,000 claim if that is a reasonable method of achieving the result." *Anderson*, 578 F.3d at 546.

In this case, the size of the fee request relative to the damage award - more than 20 times greater than the damages awarded - raises concerns for the Court. *See, e.g., Cole,* 169 F.3d at 488 (7th Cir. 1999) (finding an attorney's fee award of 19 times the amount awarded to be "off the map"). The trial lasted a mere three days, and involved testimony from the plaintiff and a few employees from Von Maur. The trial involved only two claims and did not involve expert testimony or extensive exhibit preparation. Witnesses were in-state residents and did not require travel for deposition or trial. Yet Woods seeks an award for more than 1,000 hours of work. As Woods correctly notes, Von Maur spent more than 2,000 hours defending the case; vigorous prosecution and vigorous defense tend to go hand in hand. Both these numbers are exceedingly high for the relative simplicity of the facts of this litigation.

However, proportionality alone will not cause this Court to reduce the award. As discussed in the following section, the disparity between requested fees and jury damages stems from the fact that this case began as a 4-count case, but ultimately went to trial as 2-count case. Therefore, the Court should not address proportionality arguments in isolation, and instead turns to addressing whether Woods improperly seeks fees that are not sufficiently related to the single claim on which she prevailed.

**C. Degree of Success/Unsuccessful Claims**

In adjusting the lodestar calculation, courts consider the "results obtained" in the litigation, which "becomes particularly significant in cases where a technically prevailing party succeeds on only some of his claims for relief." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). Woods originally filed a 4-count complaint against Von Maur. Woods voluntarily dismissed her Title VII retaliation claim in the middle of briefing on summary judgment, and the Court granted summary judgment in favor of Von Maur as to Woods' Title VII discrimination claim, leaving 2 counts proceeding to trial. Following a jury trial, the jury found for Woods on her retaliation claim, and for Von Maur on her discrimination claim.

A prevailing plaintiff is not entitled to fees for time expended pursuing unsuccessful claims; however, when claims are related to one another, "time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other

8

claims." *Jaffee*, 142 F.3d at 413. When viewing attorney records of time spent, it is often difficult "to divide hours expended on a claim-by-claim basis." *Id.* (quoting *Hensley*, 461 U.S. at 435). Relying on *Jaffee* and its progeny, Woods likens this case to many civil rights cases, in which common facts and related legal theories merit payment of attorneys' fees even when certain claims were not successful.

When faced with partial success at trial, the Court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Sotoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (quoting *Hensley*, 461 U.S. at 436-37); *accord Alcazar-Anselmo v. City of Chicago*, 2011 WL 3236024, *7 (N.D. Ill. July 27, 2011). The issue between the parties to this case is the appropriate degree of reduction. This Circuit cautions against "mechanical claim-chopping approach." *See Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir. 1987). Woods urges this Court to follow its fellow district court and apply a 25% reduction to the total attorney's fees, on the theory that much of the attorney work related to the discrimination claim also related to the retaliation claim. *See, e.g., Alcazar*, 2011 WL 3236024 (applying a 25% reduction to total attorney's fees where plaintiff prevailed on a retaliation claim but failed on a second claim for interference with statutorily protected rights). The Court cannot apply *Alcazar's* reasoning without accounting for two key aspects unique to the course of the litigation before this Court.

9

First, while Wood's retaliation claim and the discrimination claim may have had overlapping factual circumstances and legal theories, Woods' counsel pursued at great length, and devoted significant attorney resources, toward a specific factual avenue that this Court excluded from trial. As reflected in the briefing surrounding a motion to compel filed during discovery in this case (Docket No. 12), and as reflected in the pre-trial order (Docket No. 129), Woods sought to prove the discrimination portion of her case through evidence of racial discrimination in Von Maur stores other than the store in which Woods worked. After extensive discovery to obtain that information, this Court ruled evidence of discrimination at other Von Maur stores to be inadmissible at trial.

Second, up until the direct testimony given at trial, Woods had contended that two instances of discrimination occurred in the Von Maur Glenview store, which instances Woods discussed with her supervisors and which instances Woods claimed led to her retaliatory termination. Upon direct examination at trial of the central witness to one of the two incidents, that witness revealed that her memory had been faulty and the events she described in fact occurred a year prior to the year she initially claimed - thereby falling outside the statute of limitations. The Court instructed to disregard the testimony of that witness and to consider only the single incidence of alleged discriminatory conduct in deliberating as to Woods' retaliation claim, thereby nullifying any concern about the limited testimony provided on the older claim. But of importance to the fees incurred in

preparation for and during the trial, Woods' counsel admitted at sidebar that while they had not known about the witness's faulty memory as to the timing of the incident during discovery or during the witness' deposition, counsel had been aware of the true year of the event prior to trial and did not disclose it to Von Maur's counsel or to the Court.

The Court did not sanction Woods' counsel for failing to disclose the correct year of the incident to counsel for Von Maur, and does not do so now; Woods' counsel told the Court that the error was unintentional, and has removed from the fee request hours related to that witness. However, both exclusion of the discrimination evidence and the failure to disclose a witness' changed testimony are relevant to determining the appropriate lodestar adjustment. Both of these factual avenues pursued by Woods - evidence of discrimination in the Von Maur store chain generally, and incorrect evidence provided by a testifying witness - required extensive written discovery production and discovery review by both parties, as well as deposition and witness prep by *both* parties for an avenue of questioning that the Court ruled inadmissible prior to trial and for a witness whose testimony had to be excluded. Woods did not prevail at trial in any way related to these two avenues. Particularly with respect to the evidence of store-wide discrimination, the discovery process related to acquiring and reviewing that evidence accounts for a substantial amount of the resources spent by both parties.

In light of these two issues that are unique to the course of the litigation before this Court, the lodestar calculation must be reduced. Therefore, the Court adjusts the lodestar calculation down by 40%, a figure designed to allow for the fact that while there existed some factual and legal overlap between Woods' successful claim and her three unsuccessful claims, Woods did lose on three out of four claims, and conducted extensive written and oral discovery in furtherance of the claims upon which she lost or in pursuit of evidence that proved to be inadmissible at trial. Such discovery cannot be said to have "related" to the single claim upon which she prevailed, and cannot be said to have contributed to Woods' single claim victory.

### D. Fee Petition

Finally, Woods seeks to include in the petition for fees the hours spent in litigating the fee petition. Courts in this district have held that when a prevailing party is forced to litigate in order to obtain fees to which it is entitled, the award may include a reasonable fee for the time spent litigating the fees. *See, e.g., Crispin R., Jr. v. Board of Educ. Of the City of Chicago, District 299*, 2010 WL 3701328 at *6 (N.D. Ill. September 10, 2010) (citing cases). As set forth above, the Court finds in favor of Woods on some of the litigated points, and in favor of Von Maur on others. In light of the mixed result, the Court finds it appropriate that each of the parties bear its own fees with respect to litigating the fee petition.

## CONCLUSION

Having reviewed the lodestar calculation of Woods' attorney's fees, and addressed the factors meriting adjustment of the lodestar figure, in particular the degree of Woods' success and the relatedness of successful and unsuccessful claims, the Court reduces the lodestar calculation by 40%, for an award of $192,660.93.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 5, 2012